IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| OIL PATCH GROUP, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No.  6:23-cv-29 |
| | § | |
| DANETTE MARES, | § | |
| | § | |
| Defendant. | § | |

**ORIGINAL COMPLAINT**

Plaintiff Oil Patch Group, Inc. ("**Plaintiff**" or "**OPG**") files this Original Complaint ("**Complaint**") against Defendant Danette Mares ("**Mares**" or "**Defendant**"), and alleges as follows:

**INTRODUCTION**

1. OPG has spent significant time and resources in becoming a leader in the oilfield housing, rental, products, and services industry. OPG has also expended significant time and resources in developing relationships and goodwill with its customers and employees. Now, using OPG's trade secrets and confidential information, two former high-ranking OPG employees, with the help of Defendant, have launched a surprise and orchestrated campaign to start a competing business and raid OPG's customers and employees. And they are doing so in blatant violation of their legal obligations.

2. Earlier this year, while Derek Elzner ("**Elzner**") was still employed as the President of OPG, he secretly started a new company, Titan Accommodations, LLC ("**Titan**"), and is registered as its managing member. A few months later, Elzner abruptly resigned from OPG, without any warning or notice. His resignation was followed two days later by Dwayne "Bubba"

Beran ("**Bubba**"), his lieutenant, and seven other OPG employees, including Bubba's wife, Lenae Beran ("**Lenae**"), and Defendant. Elzner, Bubba, Defendant, and those other employees then launched into full-fledged competition against OPG through Titan in the oilfield housing, rental, products, and services industry. Within days of the coordinated departure, two of OPG's biggest customers—accounting for millions in annual revenue for OPG—informed OPG they were moving business from OPG to Titan. In the wake of that coordinated departure, Defendant also deleted large amounts of emails from her OPG account, in the days leading up to and in particular on the date of her resignation.

3.     In the midst of their coordinated effort to unlawfully compete against OPG, on June 1, 2023, Lenae emailed Titan expense reports to Bubba's old OPG email address and Defendant's Titan email address. Alarmingly, the Titan expense reports were an exact replica of OPG's confidential and trade secret expense reports. The only difference is the name at the top was changed from OPG to Titan. In fact, the Titan expense reports still had a reference to "OPG" in the small print in the expense reports.

4.     The stolen OPG expense reports help explain how Titan was able to so quickly mobilize and become a direct competitor diverting business from OPG's largest customers. With Defendant's assistance, Titan got a head start by leveraging OPG's confidential and trade secret information—which OPG spent years and valuable resources developing—to immediately have a fully capable company positioned to unlawfully compete against OPG, raiding OPG's customers and employees.

5.     Defendant's unlawful conduct is causing immediate and irreparable harm to OPG. OPG filed this action to prevent further irreparable harm through a temporary restraining order and preliminary and permanent injunctive relief, along with other relief.

## THE PARTIES

6. Plaintiff Oil Patch Group, Inc. is a Delaware corporation with its headquarters and principal place of business at 12012 Wickchester Ln, Suite 475, Houston, Texas 77079.

7. Defendant is Danette Mares, who is a Texas resident with a last known address of 1171 Abrameit Road, Goliad, Texas 77963.

## JURISDICTION AND VENUE

8. This Court has personal jurisdiction over Defendant as she is a resident of Texas.

9. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1367. OPG asserts causes of action under the Defend Trade Secrets Act ("**DTSA**"), 18 U.S.C. § 1836(b), and the Computer Fraud and Abuse Act ("**CFAA**"), 18 U.S.C. § 1030(g). This Court has subject matter jurisdiction over these federal claims pursuant to 18 U.S.C. § 1331. This Court has supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367 because the state law claims are so related to the DTSA claim that they form part of the same case or controversy. *See*, *e.g., Am. Mortgage & Equity Consultants, Inc. v. Bowersock*, 1:19-CV-432-RP, 2019 WL 2250170, at *1 (W.D. Tex. May 24, 2019) (addressing DTSA and CFAA claims along with state law claims for breach of a non-solicitation agreement, tortious interference with a contract, civil conspiracy, conversion, and restitution); *BRG Ins. Sols., LLC v. O'Connell*, 3:16-CV-2448-N, 2017 WL 7513649, at *1 (N.D. Tex. July 18, 2017) (addressing a DTSA claim along with state law claims for tortious interference with prospective business relationships, tortious interference with business relationships, breach of non-compete and non-solicitation agreements, and civil conspiracy).

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because this is the judicial district where the Defendant resides.

## FACTUAL ALLEGATIONS

*OPG's Business and Confidential Information*

11.     OPG is an oilfield housing, rental, services, and products company that serves customers in the oil and gas industry throughout North America. OPG provides customers with rentals of drill pipe, tubing, and tools used for drilling, completion, and workover operations in the oilfield. OPG also provides customers with rentals of short- and long-term housing quarters to support oil and gas drilling operations. In addition to its rental business, OPG provides customers with completion, production, and pressure control services to support operators and other customers in the field.

12.     OPG's (and its affiliates') confidential and trade secret information includes, without limitation, (i) business information and materials, including, without limitation, pricing models; market and business analyses; investments or investment opportunities; growth plans; acquisition prospects; strategy; finances; business plans, methods and processes; business proposals, operations, products or services; evaluations; contract terms and conditions; pricing and bidding methodologies and data; sales data; customer information; supplier and vendor information; credit information; financial data; purchasing, pricing, bidding, selling and marketing data and contracts; (ii) technical information and materials, including, without limitation, computer programs; software; databases; methods; know-how; formulae; compositions; technological data; technological prototypes, processes, discoveries, inventions, ideas, concepts, surveys, improvements and designs; developmental or experimental work; training programs and procedures; diagrams, charts, products and services (including, without limitation, product developments, product specifications and technical specifications); (iii) information and materials relating to future plans including, but not limited to: marketing strategies and techniques;

intellectual property; projects and proposals; acquisition and financing plans; strategic alliances; production processes; and research and development efforts; and (iv) any other information that gives OPG or its affiliates an advantage with respect to its competitors by virtue of not being known by those competitors (collectively "**Confidential Information**").

13. OPG's Confidential Information is not generally known to the public, or to other companies or individuals (in OPG's industry or elsewhere) who could obtain an advantage from it, nor is it shared with third parties absent a nondisclosure agreement.

14. OPG's Confidential Information provides OPG with a significant advantage over its competitors who do not know or use the Confidential Information and who, if armed with such information, could unfairly compete with OPG in the market. Disclosure of OPG's Confidential Information to its competitors would permit them to rapidly develop identical, competing business models, products, and services to bring them to market or win valuable customer business.

15. Furthermore, without having to incur OPG's significant research and development costs or expend the valuable labor and substantial time OPG has invested into its business, a competitor could undercut OPG's prices and engage in a price war with customers. Accordingly, the protection of the Confidential Information is paramount to the continued success of OPG's ability to fairly compete in the oilfield services, housing, rental, and products industry.

16. In recognition of the critical need to protect its Confidential Information (particularly from a head-to-head competitor), OPG takes numerous steps to safeguard the secrecy of, and limit access to, such information. For example, among other things, OPG:

    a. has policies that are designed to identify and protect its Confidential Information;

b. requires its employees to use passwords to protect OPG's systems containing Confidential Information (including, for example, multiple layers of passwords and multifactor authentication) and prohibits the sharing of passwords;

c. limits access to Confidential Information to those employees who need to know the information in order to perform their roles for OPG;

d. terminates employees' access to OPG's systems when employees are terminated or resign;

e. requires third parties to sign confidentiality agreements prior to OPG's disclosure of Confidential Information to them;

f. trains employees on the importance of protecting OPG's Confidential Information; and

g. has implemented technological and other physical barriers, including, for example, restricting access to its buildings and offices, and other mechanisms that prevent unauthorized access to, and transfers of, its Confidential Information.

### *Elzner Formed Titan to Compete Against OPG and Defendant Joined*

17. On February 6, 2023, months before resigning as President of OPG, Elzner formed business entity Titan Accommodations, LLC. Elzner is named as the managing member of Titan. Titan is a direct competitor to OPG, including through its provisions of rental housing units in the oilfield as well as oilfield services.

18. Elzner abruptly resigned from OPG without notice on April 19, 2023. Bubba resigned without notice two days later on April 21, 2023. Seven other OPG employees, including

Defendant, Lenae, Eric Elzner, Kent Kaddatz, Corey Vance, Shawn Lustig, and Justin Guillory, also resigned beginning on or about April 21, 2023. Defendant, along with those other employees who collectively resigned, went to work for competitor Titan, the company formed by Elzner while still the President of OPG.

19. Prior to her resignation, Defendant was Manager – Accounting at OPG. In her role at OPG, she oversaw accounts payable and accounts receivable at OPG, including the processes for accounts payable and accounts receivable. She also supervised various accounting functions, including purchasing, purchase orders, payments to vendors, and invoicing to customers.

20. Defendant deleted a large number of emails from her OPG email account, in the days leading up to her resignation from OPG and in particular on April 21, 2023, the date of her resignation.

21. Titan has also induced two of OPG's largest customers, representing millions of dollars of annual revenue for OPG, to divert business from OPG to Titan.

22. In short, within no time at all, Titan, a new direct competitor to OPG, is up and running and has already induced OPG's employees and customers to leave OPG and go to Titan. Defendant's intimate knowledge of OPG's business and Confidential Information and improper use of its Confidential Information and trade secrets gave Defendant, the other former OPG employees, and Titan an unfair advantage and facilitated their ability to get Titan up and running so quickly.

***Lenae Sent OPG Evidence of Misappropriation of OPG's Trade Secrets and Confidential Information***

23. On June 1, 2023, Lenae—former OPG employee and Bubba's wife—emailed Titan expense reports to Bubba's prior OPG email address as well as to Defendant's email address.

24. Besides changing the name of the company on the top of the expense reports from OPG to Titan, they are an *exact copy* of OPG's trade secret and confidential expense reports that OPG uses in its business. At the very least, Titan failed to completely scrub the stolen expense reports of all traces of OPG, and it sloppily left a reference to "OPG" on the face of the documents in the bottom right corner of the stolen expense reports.

25. As evidenced by the stolen expense reports, the explanation for how Titan was able to so quickly mobilize and take customers and employees from OPG is crystal clear. Titan, with Defendant's help, is diverting OPG's business to itself by using OPG's confidential, trade secret, and proprietary information to directly compete against OPG in violation of the law.

*OPG Is Suffering Immediate and Irreparable Harm*

26. OPG is suffering immediate and irreparable harm because of Defendant's continued use of trade secrets and unlawful competition against OPG for the benefit of her employer, Titan.

27. Indeed, as discussed above, there is already concrete evidence that Defendant and Titan are using OPG's confidential information to compete against OPG. OPG has no adequate or other remedy at law for such acts and threatened acts.

28. OPG commenced this action to protect its trade secrets, Confidential Information, and other legitimate business interests from irreparable and ongoing harm by Defendant.

## CAUSES OF ACTION

### Count One: Misappropriation of Trade Secrets under Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.*

29. OPG repeats and re-alleges the foregoing allegations as if fully set forth herein.

30. In her position with OPG, Defendant had access to trade secrets and other nonpublic Confidential Information that is of extraordinary value to OPG.

31. As set forth above, OPG expended significant amounts of time and money to develop certain trade secret information, including without limitation (i) business information and materials, including, without limitation, pricing models; market and business analyses; investments or investment opportunities; growth plans; acquisition prospects; strategy; finances; business plans, methods and processes; business proposals, operations, products or services; evaluations; contract terms and conditions; pricing and bidding methodologies and data; sales data; customer information; supplier and vendor information; credit information; financial data; purchasing, pricing, bidding, selling and marketing data and contracts; (ii) technical information and materials, including, without limitation, computer programs; software; databases; methods; know-how; formulae; compositions; technological data; technological prototypes, processes, discoveries, inventions, ideas, concepts, surveys, improvements and designs; developmental or experimental work; training programs and procedures; diagrams, charts, products and services (including, without limitation, product developments, product specifications and technical specifications); (iii) information and materials relating to future plans including, but not limited to: marketing strategies and techniques; intellectual property; projects and proposals; acquisition and financing plans; strategic alliances; production processes; and research and development efforts; and (iv) any other information that gives OPG or its affiliates an advantage with respect to its competitors by virtue of not being known by those competitors. This information constitutes "trade secrets" under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq*.

32. OPG has made concerted efforts to maintain the secrecy of its trade secrets and to prevent the unauthorized disclosure or use of its trade secret information through, among other measures, (a) having policies that are designed to identify and protect its trade secrets; (b) requiring its employees to use passwords to protect OPG's systems containing Confidential Information

(including, for example, multiple layers of passwords and multifactor authentication) and prohibiting the sharing of passwords; (c) limiting access to trade secrets to those employees who need to know the information in order to perform their roles for OPG; (d) terminating employees' access to OPG's systems when employees are terminated or resign; (e) requiring third parties to sign confidentiality agreements prior to OPG's disclosure of trade secrets to them; (f) training employees on the importance of protecting OPG's trade secrets; and (g) implementing technological and other physical barriers, including, for example, restricting access to its buildings and offices, and other mechanisms that prevent unauthorized access to, and transfers of, its trade secrets.

33. OPG's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other companies or individuals (in OPG's industry or elsewhere) who could obtain an advantage from it. OPG provided Defendant access to its trade secret information for the limited purpose of use of this information during the scope of her employment for OPG for the benefit of OPG.

34. This information is used in interstate commerce by OPG—a Delaware entity with its principal place of business in Texas—which utilizes this trade secret information in its businesses across the United States.

35. As evidenced already by the stolen expense reports emailed by Lenae to OPG and Defendant's Titan email account, and Titan's clear head start in developing its business, Defendant has already used and disclosed to Titan and Titan is using OPG's trade secrets and Confidential Information, including without limitation OPG's expense reports, to compete against OPG.

36. Unless enjoined by this Court, Defendant's misappropriation of OPG's trade secrets will cause significant irreparable harm to OPG, and OPG has no adequate or other remedy

at law for such acts and threatened acts. Irreparable harm is presumed when trade secrets, such as OPG's trade secret information, have been misappropriated. As such, OPG is entitled to a temporary restraining order and preliminary and permanent injunctive relief.

37. As a direct, proximate, and foreseeable result of Defendant's misappropriation of OPG's trade secrets, OPG has been damaged in an amount to be determined at trial and is entitled to recover attorneys' fees and expenses from Defendants under the DTSA.

### Count Two: Misappropriation of Trade Secrets under Texas Uniform Trade Secrets Act, TEX. CIV. PRAC. & REM. CODE § 134A

38. OPG repeats and re-alleges the foregoing allegations as if fully set forth herein.

39. In her position with OPG, Defendant had access to trade secrets and other nonpublic Confidential Information that is of extraordinary value to OPG.

40. As set forth above, OPG expended significant amounts of time and money to develop certain trade secret information, including without limitation (i) business information and materials, including, without limitation, pricing models; market and business analyses; investments or investment opportunities; growth plans; acquisition prospects; strategy; finances; business plans, methods and processes; business proposals, operations, products or services; evaluations; contract terms and conditions; pricing and bidding methodologies and data; sales data; customer information; supplier and vendor information; credit information; financial data; purchasing, pricing, bidding, selling and marketing data and contracts; (ii) technical information and materials, including, without limitation, computer programs; software; databases; methods; know-how; formulae; compositions; technological data; technological prototypes, processes, discoveries, inventions, ideas, concepts, surveys, improvements and designs; developmental or experimental work; training programs and procedures; diagrams, charts, products and services (including, without limitation, product developments, product specifications and technical

specifications); (iii) information and materials relating to future plans including, but not limited to: marketing strategies and techniques; intellectual property; projects and proposals; acquisition and financing plans; strategic alliances; production processes; and research and development efforts; and (iv) any other information that gives OPG or its affiliates an advantage with respect to its competitors by virtue of not being known by those competitors. This information constitutes "trade secrets" under the Texas Uniform Trade Secrets Act ("TUTSA"), TEX. CIV. PRAC. & REM. CODE § 134A.

41.     OPG has made concerted efforts to maintain the secrecy of its trade secrets and to prevent the unauthorized disclosure or use of its trade secret information through, among other measures, (a) having policies that are designed to identify and protect its trade secrets; (b) requiring its employees to use passwords to protect OPG's systems containing Confidential Information (including, for example, multiple layers of passwords and multifactor authentication) and prohibiting the sharing of passwords; (c) limiting access to trade secrets to those employees who need to know the information in order to perform their roles for OPG; (d) terminating employees' access to OPG's systems when employees are terminated or resign; (e) requiring third parties to sign confidentiality agreements prior to OPG's disclosure of trade secrets to them; (f) training employees on the importance of protecting OPG's trade secrets; and (g) implementing technological and other physical barriers, including, for example, restricting access to its buildings and offices, and other mechanisms that prevent unauthorized access to, and transfers of, its trade secrets.

42.     As evidenced already by the stolen expense reports emailed by Lenae to OPG and Defendant's Titan email account, and Titan's clear head start in developing its business, Defendant has already used and disclosed to Titan and Titan is using OPG's trade secrets and Confidential

Information, including without limitation OPG's expense reports, to compete against OPG, thereby misappropriating OPG's trade secrets in violation of the TUTSA.

43. Unless enjoined by this Court, Defendant's misappropriation of OPG's trade secrets will cause significant irreparable harm to OPG, and OPG has no adequate or other remedy at law for such acts and threatened acts. Irreparable harm is presumed when trade secrets, such as OPG's trade secret information, have been misappropriated. As such, OPG is entitled to a temporary restraining order and preliminary and permanent injunctive relief.

44. As a direct, proximate, and foreseeable result of Defendant's misappropriation of OPG's trade secrets, OPG has been damaged in an amount to be determined at trial and are also entitled to attorneys' fees and expenses under TUTSA.

**Count Three: Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030**

45. OPG repeats and re-alleges the foregoing allegations as if fully set forth herein.

46. The Computer Fraud and Abuse Act, 18 U.S.C. § 1030, provides that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g).

47. Defendant knowingly and intentionally accessed, deleted, downloaded, copied, took, and/or stole OPG's confidential business and proprietary information and trade secrets, without authorization, from certain OPG computers and/or computer network. All information created, sent, received, or stored on OPG's electronic resources was the property of OPG.

48. OPG's computers and computer systems are "protected computers" as that term is defined in 18 U.S.C. § 1030(e)(2)(B) because they are used in interstate commerce and communication in the course of OPG's business.

49. Defendant knowingly and intentionally accessed OPG's computer network without authorization and/or exceeded Defendant's authorized access, and thereafter accessed information before deleting and/or otherwise destroying information from a protected computer in violation of, among others, 18 U.S.C. § 1030(a)(2)(c).

50. As a result of Defendant's conduct, OPG has suffered damages and loss to its computers and business, including specifically impairment of the integrity and/or availability of certain data and/or information in OPG's computers, and will likely incur costs in recovering and restoring its data and information, in an amount that shall be determined at trial.

51. OPG has suffered further injury and harm in the loss of its confidential business and proprietary information and trade secrets which were misappropriated by Defendant. As OPG's investigation efforts remain ongoing, it is currently unable to state the full extent of such loss/misappropriation.

52. In addition to the aforementioned damages, OPG also seeks injunctive relief to enjoin Defendant's continued and/or future use and misappropriation of OPG's confidential business and proprietary information and trade secrets, and for the return of OPG's confidential business and proprietary information and trade secrets.

## Count Four: Conversion

53. OPG repeats and re-alleges the foregoing allegations as if fully set forth herein.

54. Defendant, without authorization or consent, has wrongfully accessed, converted, and used property belonging to OPG, including without limitation OPG's expense reports. Accordingly, Defendant has exercised dominion over OPG's property in a manner that is improper and without authorization.

55. Defendant's conversion of OPG's property has proximately caused OPG to suffer damages within the jurisdictional limits of this Court. Accordingly, OPG is entitled to judgment against Defendant for compensatory and exemplary damages and such other and further relief to which OPG is entitled at law or in equity.

### Count Five: Breach of Fiduciary Duties

56. OPG repeats and re-alleges the foregoing allegations as if fully set forth herein.

57. By the nature of her employment and position with OPG, there was a fiduciary relationship between Defendant and OPG, by which Defendant owed a fiduciary duty to OPG.

58. Defendant breached her fiduciary duties to OPG through the misappropriation of OPG's confidential information and use of OPG's confidential information to unfairly compete against OPG, as well as a deletion of a substantial number of emails prior to her resignation.

59. Defendant's breaches of fiduciary duties have caused a benefit to Defendant and Titan and Defendant's breaches of fiduciary duties have proximately caused OPG to suffer injury, both damages and irreparable harm. Accordingly, OPG is entitled to judgment against Defendant for damages and such other and further other relief, including injunctive relief, to which OPG is entitled at law or in equity.

### ATTORNEYS' FEES AND COSTS

OPG seeks reasonable and necessary attorneys' fees and costs against Defendant under DTSA and TUTSA.

### JURY DEMAND

Plaintiff hereby demands a trial of this action by jury.

## **PRAYER FOR RELIEF**

Wherefore, OPG requests that judgment be entered in its favor and against Defendant as follows:

    a.    Ordering that Defendant is liable for:

        i.    Violating the DTSA;

        ii.    Violating TUTSA;

        iii.    Violating the CFAA;

        iv.    Conversion; and

        v.    Breach of fiduciary duties to OPG.

    b.    Upon application, a temporary restraining order, a preliminary injunction, and a permanent injunction:

        i.    Enjoining Defendant from accessing, using, disclosing, distributing, disseminating, or discussing OPG's trade secret information and other Confidential Information;

        ii.    Ordering Defendant, and anyone acting or purporting to act in concert or participation with her, to return to OPG all information, documents, and tangible things in their possession, custody, or control (if any), whether in physical or digital format, including any and all copies thereof, that contain OPG's trade secrets and other confidential information;

        iii.    Ordering Defendant to not work in a position for Titan in which she would inevitably disclose OPG's trade secrets to Titan; and

        iv.    Ordering Defendant to produce personal and work computers, phones, iPads, personal digital assistants (PDAs), flash drives and other similar electronic

      devices, and give access to any electronic email accounts to an independent third-party forensic analyst selected by OPG for imaging and forensic examination.

  c. Awarding actual, compensatory, and/or consequential damages to OPG in an amount to be determined at trial;

  d. Awarding exemplary damages to OPG in an amount to be determined at trial;

  e. Ordering an accounting of all Defendant's disclosures and/or uses of OPG's trade secrets and Confidential Information;

  f. Ordering an accounting of all profits, benefits, and/or other compensation provided to or derived by Defendant through her wrongful conduct;

  g. Awarding OPG reasonable and necessary attorneys' fees, costs, and related expenses incurred in bringing and prosecuting this action;

  h. Awarding pre-judgment and post-judgment interest at the highest lawful rates; and

  i. Awarding all such other and further relief that OPG may be entitled to in law or equity.

Date: June 20, 2023

Respectfully submitted,

**HAYNES BOONE LLP**

By: */s/ Michael J. Lombardino*

Michael J. Lombardino
Texas State Bar No. 24070159
Michael.Lombardino@haynesboone.com
1221 McKinney Street, Suite 4000
Houston, Texas 77010
Telephone: 713.547.2301
Facsimile: 713.547.2600

Laura E. O'Donnell
Texas State Bar No. 00797477
Laura.ODonnell@haynesboone.com
Henson Adams
Texas State Bar No. 24101418
Henson.Adams@haynesboone.com
112 East Pecan Street, Suite 1200
San Antonio, Texas 78205
Telephone: 210.978.7414
Facsimile: 210.554.0457

**ATTORNEYS FOR
OIL PATCH GROUP, INC.**

4877-4949-0027